Kilty, Chancellor.
The defendants Lu~ cretia and Sarah Tilly being before me, and appearing to be infants under the age of twenty-one years, Dennis Claude is hereby appointed guardian to them for the purpose of answering on their behalf to the bill.
On the same day, the infant defendants put in their answer by their guardian ad litem, in which they say that they admit the facts stated in the said bill, and were willing that a decree should be passed according to the prayer of the bill.
27th October, 1817.
Kilty, Chancellor.
Decreed, that the interest of the parties in the land in the proceedings mentioned be sold, that JVicholas Brewer be appointed trustee for making the sale, &c. He shah then proceed to sell the said real estate, either entire, or in such parcels as he shall deem advantageous, either at public or private sale, after giving at least three weeks notice in some convenient newspaper, in the event of a public sale, of the time, place, manner, and terms of sale, which shall be that the purchaser shall give bond with approved surety, for paying the purchase money, with interest, within twelve months from the time of sale, &c. (a)
*439 On tie 30tL of July, 1818, the trustee reported that he had made a private sale of the unexpired term in one hundred and fifty acres of the tract of land called White Hall, namely, until the youngest child of Elizabeth Tilly, deceased, should arrive at the age of twenty-one years, unto’ Joseph Evans, who was entitled to the reversion, on the 28th day of October, 1817, for the sum-of $1,500, which sum is not to bear interest until the said Joseph Evans shall obtain the possession of the land, which is expected to be in December, or the first of January next. This sale, as thus reported, was finally ratified on the 15th of March, 1819.
On the 18th of November, 1829, Berry Griffith filed his petition in this case, in which he stated, that Horatio Tilly, one of the parties mentioned in the bill of complaint, was dead; that administration of his estate had been granted to the petitioner; and that the trustee Brewer, had received the purchase money for the interest on the land sold by him; and had failed to pay to the intestate of the petitioner, the share to which, he was entitled. Whereupon the petitioner prayed, that the trustee Brewer, might be ordered to make a further report; to pay the petitioner the share due to his-intestate; to bring the purchase money into court, &c. ■
18fA November, 1829.
Bland, Chancellor.
This petitioner comes as the administrator of one of the original parties. If this is to be regarded as a suit, in all respects analogous to an ordinary *440 suit by one party, claiming adversely to another, then it is shewn, by this petitioner himself, to have abated by the death of one of the materially interested parties; and therefore, it cannot, in any way, be further proceeded in, until it has been regularly revived. But this is a special form of proceeding, sanctioned by the legislature, whereby a sale of the real estate of infants may be ordered, on its being shewn to the Chancellor* to be for their interest and advantage that it should be sold, and the proceeds of the sale invested in some public stock, or other permanent fund for their benefit. It is a form of judicial proceeding, which may be originated and prosecuted to a conclusion by a next friend, and a guardian of an infant, without the infant himself ever having had the least knowledge of it whatever. And therefore, it cannot be treated as an adversary suit, which abates by the death of an infant wdio was a party to the proceeding; since his heir, or representative comes in after his death, not to prosecute or defend an unsettled right, but merely to claim that, in a new form, the right to which had never been drawn in question; and was not then, in any way, to be put in issue. The representative is let in to make his claim as from the deceased infant’s guardian, considering this court in such a proceeding for the sale of the infant’s estate, as having officiated as his guardian, by having thus undertaken the conversion and management of his estate. The interest of these infants sold under the decree, was of a nature that could not, on their death, descend to their heirs as real estate; and therefore, this administrator of Horatio Tilly, deceased, who was one of the original parties to the proceeding, may now well be allowed thus to come in, to obtain so much of his intestate’s interest as remained unsatisfied, at the time of his death, by the trustee Brewer.
Ordered, that the said trustee forthwith make a full and particular report of his proceedings on oath; and bring into court all the money now in his hands, as prayed, or show good cause to the contrary, on the third day of December next; provided, that a copy of this order, together with a copy of the said petition, be served on him on or before the twenty-first instant.
On the 3d of December, 1829, the trustee Brewer, made report on oath, in which he says, that he received a small part of the proceeds of said sale in cash; that the greater part was paid by said Joseph Evans, to the said Lucretia, Edward, Elizabeth, Margaret and Sarah Tilly, or for their benefit, with the trustee’s con *441 sent; that considering the proceeds of the said sale to be applied to the maintenance of the aforesaid persons, some of whom, to wit: Lucretia and Margaret, were very young, and totally unable to provide for themselves, in such proportions as their respective necessities required, he appropriated the whole proceeds of sale, and a considerable additional amount, to that purpose; that the said persons have each received from him, more than their proportions, if the same should be divided equally among them. Horatio Tilly has only received the sum of $5 68, He was bound apprentice to a trade in the city of Washington, and in a short time after the sale, absconded; and has never been since heard from; and that is the only evidence of the death of the said Horatio; that the said Lucretia and Margaret Tilly, were deserted by their relations, and in danger of perishing from want, when the said Sarah Tilly, who has since intermarried with the petitioner, herself contracted for her board, with Mrs. Ann Hyde, prevailed on the trustee to pay her board for one year, out of the proceeds of sale; stating, that she herself would, about that time, be married, and able to take care of them after that time. But her marriage not taking place, this trustee was compelled, by motives of humanity, and by the intreaties of the said Sarah, to advance considerable sums from his own pocket, for their maintenance, they having no other property, or see them turned destitute into the street. For which expenditures, and all other expenditures as trustee, he refers to the vouchers herewith filed; and which he prayed to be permitted to establish by proof, where they are not in themselves legal evidence; that Horatio Tilly owes no debts; and the object of obtaining administration of his estate, is to divide the proceeds among his said brothers and sisters; and this trustee conceives, that he ought, at least, to be allowed the amount of the said Lucretius and Margaret's parts of the said Horatio's interest, if he have any, and which he has already expended for their benefit; and he further contends, that he ought to be allowed the whole of the amount claimed by the administrator of the said Horatio, even against his creditors; but is ready to bring the same into court, if required.
19th April, 1830.
Bland, Chancellor.
The matter of the petition of Berry Griffith, standing ready for hearing, and having been submitted on notes by the solicitors of the parties, the proceedings were read and considered.
This devise, as regards these infants, is one of a very singular *442 character. It is clear, that the trustee was to hold, at all events, for the use of the testator’s daughter, Elizabeth Tilly, during her life; but whether any or what interest, during the same time, vested in her children seems doubtful. It is certain, however, that as tenant for life, she was constituted the pernor of the profits of the estate charged, either for her own exclusive use, or'for her own benefit, and also for the maintenance of her children. During her life, therefore, it could only be the duty of the trustee to hold the legal estate for the purpose of protecting the right thus given to her. But on her death, a new and different interest vested in her infant children. After her death, the trustee is directed to hold £to and for the maintenance of her children, until they should arrive at twenty-one years of age.’
Where an estate is given to a trustee to hold for the use of an adult of sound mind, for life or any given period of time, the object-of the donation may be most beneficially obtained by considering the donee as the actual pernor of the profits; and merely allowing him to enter upon the, estate, and gather for himself all the products and benefits he can obtain. But where such a donation is made to infants or lunatics, for their maintenance, from the very nature of the gift, it must be deemed to have been the intention of the donor, that the actual pernancy of the profits should be committed to other hands for the benefit of the cestui que use; because otherwise, the express purpose of the bounty might fail, or become altogether nugatory.
Therefore, I hold it to have been the intention of this testator, that his daughter Elizabeth, should be allowed herself, to take the profits of the estate during her life, in any way she might deem most advantageous; and, that after her death, the' profits should be collected by the trustee himself, and applied to the maintenance of her infant children.
The testator has made no distinction as to the nature and quality of the maintenance to be given to any of the infants; and consequently, they must be all placed upon the same footing, and be allowed to come in equally, share and share alike. And as it is a gift for maintenance only, it is manifest, that it must cease as well by the death, as by the full age of each one of them, although the testator is silent as to a termination of the right by death. Hence, supposing the estate to be equally productive each year, during the whole time this incumbrance continued, it is evident, that the fund thus appropriated for the maintenance of these infants, *443 would be applicable in greater proportions to the younger or survivor of them, as the right of each elder or other one, was terminated; since it is directed that the whole of the profits should be given in maintenance, even if there should be but one infant left. If this right of these infants had not been sold, there could have been no difficulty in directing the trustee to collect the annual profits of the estate, and to apply them to the maintenance of such of the infants, as should be alive at the time of the distribution.
But the sale which has been made, presents the subject under a new aspect. The whole of the rents and profits which could ever have been taken by the trustee for the benefit of the infants, have, by a kind of anticipation; beeD gathered at once, and the estate has been finally and conclusively discharged from the incumbrance; and therefore, the question now is, how are the proceeds of the sale of the whole of this right to be administered ?
It must now be assumed, that the court had the power to order the interest of these infants to be sold, as directed by the decree of the 27th of October, 1807; since that decree cannot now be in any way revised or reversed. (b) And it must also be presumed, that the sale so ordered, was intended for the benefit of each of these infants respectively, according to the terms of the devise under which they claim, as the sale of that interest so given, was alone ordered to be sold by the decree; and consequently, the right of no one of them can now be taken to have been in any respect enlarged, lessened, or impaired by that decree. As infants, and during non-age, their claims were exactly equal; but, considered as elder and younger children, the extent and duration of their interests, in the proceeds of sale, are essentially different. The interests of the younger being greater than those of the elder, in proportion as the difference of age gives to the younger or survivor, a right to have a greater share of the whole annual product, applied to their maintenance after the death or full age of the others.
If the charge upon this real estate, for the benefit of these infants, had been suffered to remain, the whole profits must have been applied for the use of those only who were the infant survivors at the time the profits accrued. And as it could not have been the intention of the court to enlarge, diminish, or alter the rights of any one of them by the sale, it is clear, that these proceeds of sale, being in fact, the price of those rents and profits, must be dis *444 tributed in like manner, and upon the same principles as those rents and profits themselves would have been.
Suppose, therefore, the whole amount of the net proceeds of sale to be $2,160, that sum would be equal to an average of $360 per annum, for six years. Then supposing there to be six minors, the youngest of whom would obtain his full age in six years from the day of sale; and the right of one of them to be extinguished by death, or full age, every year; it would follow, that during the first year, there being six infants to maintain, each one would be entitled to no more than $60, to be taken from the common fund; that during the second year, there being only five infants, the dividend to each would be $72; the next year, there being only four infants, the dividend to each would be $90; the next year, there being only three infants, the dividend would be $120 to each; then, there being only two infants, $180 would be awarded to each; and the last infant would take the residue, being the price of the rents and profits of the whole estate which would have accrued during the period of his minority alone.
The day on which each of these infants came of age, or died, must be ascertained; and then the net proceeds of the sale must be considered as the sum total of the rents and profits from the day of sale, when the trustee’s right to take them, ceased, up to the full age or death of the youngest, or last, of the infants, when the interest sold, expired; and the distribution of the net proceeds of sale must be made upon those principles among those infants, or the representatives of those who died before their shares which thus vested, had been actually paid.
It is said that the death of the petitioner’s intestate, is only presumed from his long absence. The general rule is, that any one who has not been heard of for the space of seven years may, for all ,r legal and equitable purposes, be presumed to be dead. Therefore, | in this instance, the death of Horatio Tilly may be assumed to < Vimrp Vinnnpnpfl inst seven vears after the day on which it is shewn
It is expressly declared, by the law under which the sale of the interest of these infants appears to have been made, that no part of the principal arising from the sale shall, in any wise, be applied towards the maintenance of the infant unless the Chancellor shall consider it necessary, (c) Now, whether these proceeds are to be *445 considered as arising from a sale of the infants’ real estate, or only from a sale of the rents and profits of such an estate during a given period, to which alone these infants were entitled; still, this is a legislative regulation in relation to the matter, which no trustee can be allowed, at his pleasure, to violate or disregard; he, of himself, cannot have a shadow of authority to make any application of the proceeds of sale in any way whatever. But, apart from the express provisions of any act of assembly, upon general principles, no trustee, appointed to make sale of property under a decree, in the usual form, directing the proceeds to be brought into court, can be allowed, in any manner whatever, to dispose of them without the express previous sanction of the court. This is a very-ancient rule of this court, and a due regard to the interests of suitors, requires that it should be inflexibly adhered to. Therefore, all the causes shewn by this trustee as such, why he has departed from the positive command of the decree requiring the money to be brought in must be wholly disregarded, (d)
But it appears by the proceedings, that Nicholas Brewer has been clothed with several offices in connection with the rights of these infants; and that he has acted in two distinct characters. It is a settled principle, that where two or more capacities are vested in one and the same person, each capacity, for the purposes of justice, may be considered in the same light as if they were several persons, (e) Nicholas Brewer was appointed a trustee under the will of the late Richard Biggins; and I have described what were' his rights and duties as regards the estate so placed in his hands for the maintenance of the infants. Considering him as a distinct person, while acting in that capacity, he must be treated, and allowed to account as their guardian, so far as he may have made any application of the proceeds, or in any manner contributed to their maintenance, to the extent of the proportion of the proceeds to which they may each one of them respectively be found to be entitled. In his other capacity of trustee or agent, employed by this court to make the sale, ordered by the decree, he must be charged with the whole amount of the proceeds of sale with interest, from the 1st of January, 1818. As an offset to which, he will be credited with all applications made for the maintenance of the infants, to the extent, and in the manner described; with inte *446 rest from the time of their being made; and the balance, if any, with interest thereon, he will be directed to bring into court.
Whereupon, it is Ordered, that this case be, and the same is hereby referred to the auditor, with directions to state an account accordingly.- And each party is hereby permitted to take testimony in relation to the said account before any justice of the peace, on giving three days notice as usual. Provided, that the said testimony be taken and filed in the chancery office on or before the twelfth day of June next.
On the 9th of December, 1830, the auditor made a report in-obedience to this order, in which he said, he had stated an account No. 1, between the trust estate of Elizabeth Tilly and others, and the trustee, in which the proceeds of sale are first applied to the payment of the trustee’s allowance for commission and expenses and costs of suit, and the residue is distributed amongst the infant children of Elizabeth Tilly, deceased, in manner as directed by the aforesaid order. The auditor has . adopted the'agreement of the 20th of July last, signed by the solicitors of Berry Griffith, and the trustee, as evidence of the ages of those children. He has then stated accounts between said trustee-, and each of, said infant children, which are numbered 2,3,4, 5 and 6, charging the trustee with each child’s ascertained share of the proceeds of sales, and interest thereon from the first of January, 1818, to this date; and allowing credit for his disbursements, -with interest on each disbursement from its date to this time. The result of those accounts is,,that Elizabeth Tilly, Sarah Tilly, and Lucretia Tilly have been fully,paid and satisfied; that there remains due to HoraMo Tilly, deceased,-the sum of $263 95, with interest on $153 09 from this date; and to Margaret Tilly the sum of $243 92, with interest from this "date.
■ To this report of the auditor the trustee Brewer excepted; and the case being submitted, it was, on the 29th of January, 1831, Ordered, that the exceptions be over-ruled, that the report be con.firmed, and that the proceeds be applied accordingly.

 This bill does not ask for a partition, and therefore could not have been sanctioned by the act of 1785, ch. 72, s. 12, or the act of 1794, ch. 60, or by any other course in relation to partition; if, indeed, the interest of these infants could have been made the subject of a suit for partition. It must, therefore, be considered, as it appears to have been, the first decree under the act of assembly, which declares, that where any infants are possessed of any real estate whatsoever, it shall be lawful' for the Chancellor, upon the petition of the guardian or prochein ami of such infants, after summoning such infants, and their appearance by guardian, to be appointed by the Chancellor, upon the hearing and examination of all circumstances, and upon its appearing to the Chancellor that it will be for the interest and advantage of such infants to sell such real estate, or any part thereof, to order such lands, or any part thereof, to be sold upon such terms as the Chancellor may direct. That the proceeds of the sales shall be paid over to the guardians of such infants, to be invested in such public stock, or other permanent funds, as will, at least, net six per centum per annum at the time of the purchase,,and as the Orphans Court of the counly, by whom such guardians shall have been appointed, shall direct. That the surplus interest, after what may be necessary for the maintenance and education of the infants respectively, as it accrues, *439 shall be invested by such guardian, in such stock as aforesaid. That no part of the principal arising from the sale of any real estate, by virtue of this law, shall, in any wise be applied towards the maintenance or education of any infant, unless the Chancellor shall consider it necessary. That in case of the death of any such infants before their arrival at lawful age, or their death, without lawful issue, the proceeds of sale, or stock, shall be considered as real estate, and, as such, shall descend to those heirs who would he entitled to the said lands in the same manner as if the same had not been sold. And, that the Chancellor may exercise all the powers herein provided, in all cases where infants are seized of a reversion, dependent upon an estate for life, and upon the assent of the tenant for life for the sale thereof, to order the annual interest, or such part thereof as may be deemed equitable, to be paid over to such tenant for life, during his life. — 1S16, ch. 154.
It would seem that this act had been understood, and intended by the legislature, to embrace none other than legal estates of inheritance; because, apart from its general phraseology, of its expressly directing that the proceeds of the sale should, on the death of the infant, descend in the same manner as the land would have done; and because, by a subsequent enactment, it has been expressly declared that it should extend to equitable titles to real estates. — 1818, ch. 193, s. 7. But the interest here directed to he sold was a mere use, determinable by the death or full age of the infants.

 1785, ch. 72, s. 27.

 1816, ch. 154, s. 8.

 Bennett v. Hamill, 2 Scho. & Lefr. 580.

 Coppin v. Coppin, 2 P. Will. 295; Johnson v. Mills, 1 Ves. 283; Binney’s case, ante 108.